Good morning. May it please the Court. My name is Eitan Casteljanich, and I'm representing Ginger Wentworth in this appeal. Ms. Wentworth is now 56 years old. She was 50 years old on the alleged onset date of her disability. In the Commissioner's final decision, the ALJ found that she could perform her past work as a medical receptionist. I will now address the ALJ's errors which require that this Court reverse the ALJ's decision. First and foremost is the ALJ was prejudiced against Ms. Wentworth's treating rheumatologist, Dr. Brown. In his decision, the ALJ stated that Dr. Brown is, quote, a plaintiff's doctor who reports what he is paid to say, i.e., disability, end quote. The record in this case is devoid of evidence which could support this assertion. This error by itself is so serious that it mandates at a minimum reversal. In Reed v. Mastaneri, this Court discussed the issue of ALJ prejudice. In Reed, the ALJ stated his perception that certain rheumatologists conclude that, quote, everybody, end quote, is disabled. The Court stated that there was, quote, no material in the record to support the ALJ's conclusion that the medical opinions of both available rheumatologists are unreliable. Similarly, there's no evidence of a record in this case which could support the ALJ's conclusion that Dr. Brown is a plaintiff's doctor who reports what he is paid to say, i.e., disability. This statement by the ALJ indicates clear prejudice against Dr. Brown. This Court should therefore follow Reed and remand this case based upon the ALJ's prejudice against Dr. Brown. The second error committed by the ALJ which requires remand is that including that evidence that didn't support the ALJ's assertion about Dr. Brown, the ALJ also improperly relied on other evidence that was not part of the record. Social Security regulations require that an ALJ must base his decision only upon evidence that is part of the record. This rule has been cited and upheld by this Court in Yang v. Shalala. In addition to his improper comment accusing Dr. Brown of being a plaintiff's doctor, which is not supported in the record, the ALJ also stated, and I'm quoting again from the ALJ's decision, as usual, he cites a few studies but leaves out the prominent ones, such as Wolfe, fibromyalgia problem, and it goes on a little bit further. The ALJ's assertion that Dr. Brown has, quote, as usual, end quote, cited a few studies indicates that the ALJ is relying upon evidence which is not in the record. There's no evidence of record which could even arguably support the ALJ's assertion that Dr. Brown has acted as usual. So who do you understand the rule to be if there is one that, in that kind of situation, if the ALJ relies in part, let's say, on an improper reason, but on the other hand, you know, also cites a legitimate reason for discounting the doctor's report, can't we just throw out the one reason, you know, rely on the good one? In this case, that's not an issue because every reason the ALJ provided is illegitimate, and I discussed that in my brief. He basically only gave four reasons for rejecting Dr. Brown's opinion. One was that the report was requested by the claimant's attorney, his prior attorney before me, and that was under the Winn case. That's not a legitimate reason. The second reason was that he seemed so anxious to supply an opinion that he's taking generic fibromyalgia conditions and applying them in his report. There's no evidence to support such an assertion. Well, let me just ask you about that. In his report, he states that she's, let's see, she was worse in cold weather. She had restless leg syndrome. It goes on. The ALJ says that none of the other doctors identified those conditions. None of the other doctors were rheumatologists treating her for her fibromyalgia during the time period from her alleged onset date. The only other rheumatologist that treated her was Dr. Jensen, who he was the first one to diagnose her with fibromyalgia. But the last time he treated her, she was still working, so he gave no opinion about disability. She actually worked about two weeks after she last saw him and then reached a point where she couldn't work anymore because she was, her schedule had been shifted to five full days on and five days off. It had been two days, three days, two days. She'd managed to do that for a long time, despite her symptoms. But for five days on, five days off, she couldn't do it, and she had to quit. She was only working. That was only part-time work that she was doing in the first place. But in answer to your question, no other rheumatologist looked at her. The only other she saw, Dr. Anderson, who's an orthopedist, and he diagnosed severe hip arthritis, which subsequent to the hearing, she's had her hip replaced. But that's not in the record. But the issue there is he was treating her for arthritis. He's an orthopedist. The only other person who saw her was Marlis Geist, who was a, at least she's an ARNP. She was the primary care treatment provider who did the referrals for her, like referring her to Dr. Anderson. And then there was a Social Security doctor, Dr. Jump, who through his report makes it abundantly clear that he doesn't fully understand fibromyalgia, as I point out in my brief. But jumping back to your, as a hypothetical question, assuming that there was some other legitimate reasons stated by an ALJ, but some that are clearly illegitimate, what should be the outcome? And I think it would depend on the particular facts of the case. In a case such as this, where one of the reasons given by the ALJ is a completely unsupportable attack on the credibility of a treating physician, a treating specialist, that so degrades the entire ALJ's reasoning that there's no way, I don't think, to recover from that. This ALJ, when an ALJ is biased against the treating physician, the treating specialist, he should have recused himself, to be quite honest. And his failure to do so is in itself error, and his entire analysis is tainted by the fact that he's biased against him. And yet, as far as everybody treats Dr. — what's his name? Dr. Brown? By the way, this isn't the same Dr. Brown as the other constants. Different Dr. Brown. As a — as a treating doctor. Yes. He was a treating physician. He was a treating specialist because she was seeing him regularly. He wasn't — she didn't just go there for an evaluation. She was referred — and oddly enough, the ALJ infers that she was referred there by her — her attorney. She wasn't. She worked at a medical facility as a medical receptionist, and she was disabled. She couldn't work anymore due to fibromyalgia. And she went to the people she worked with and said — But his letter was addressed to the lawyer, Thomas O'Malley, Esquire. Mr. O'Malley requested the evidence from him. But she didn't go there because of Mr. O'Malley. She went there because people she had worked with said, the best expert we know of in the area is Dr. Brown in Seattle. Go there. And she proceeded to go there and was treated by him on a regular basis. Is to this day continuing to be treated by him on a regular basis. This wasn't one time, you know, saw her once and made an opinion. His letter, interestingly, the ALJ, one of his reasons, he objects that there aren't treatment notes. What Dr. Brown did, his treatment notes may have been scribbles. We don't know. They often can be and are illegible. He instead took all of his treatment notes, all the visits, and summarized them in very long letters. One's three pages. One's two pages. And he discussed it all. So that was one more illegitimate reason the ALJ gave for rejecting Dr. Brown's opinion. I thought this was it when I read Dr. Brown's — let's see, I think it's the one dated October 10th, 1998. Page two, he refers to the World Health Organization defines disability. Now, where did he come up with that in the Social Security case? Who knows? Dr. Brown is a professor in rheumatology at the University of Washington. He is an expert in the field. He's written — he cites his own article in that letter. He's obviously got some knowledge about the — Are his qualifications documented in the record? Yes, they are. His curriculum DTA or — I believe it is in there. At what page? I'll find it after I sit down. I do want to reserve a little bit of time for rebuttal. Sure. Thank you. Good. Thank you. Good morning, Your Honors. May it please the Court, my name is Terry Shea. I'm here for the Commissioner of Social Security. Obviously, we — there are problems, or we do acknowledge that there are problems with the ALJ's rejection of Dr. Brown. But not everything he said was invalid or illegitimate. It's always better to include articles if you're going to cite them. But judges don't operate in a vacuum, and certainly if an issue has come up with them over and over again, the fact that they're knowledgeable about articles in the field, in this particular case articles about fibromyalgia that were in contrast to the articles that the doctor cited may have simply been a reasonable response to the doctor's citation of his own articles. We do acknowledge that he should have included the articles in the evidence if he wanted to rely on them. We feel he was simply talking about Dr. Brown's omission of opposite opinions more than relying on those arguments to discredit him. There does seem to be some language that the ALJ had dealt with this particular doctor before. However, both the district — the magistrate judge and the district court judge felt that there was no actual showing of prejudice here. There was a — That sounds awful. That sounds like he was biased against Dr. Brown. Well, obviously, that is — He wouldn't consider really anything Dr. Brown had to say. Well, I think that that's belied by the fact that he did very carefully point out counter to what the doctor said. The evidence in her own — the plaintiff's own testimony, the evidence on all the other doctor's assessments of her were very important. He didn't rely simply on his past interaction with this particular doctor. We feel the fact that he brought in all these other assessments of the plaintiff and talked about her own — Well, let me ask you this. Do you think it's possible that Dr. Brown, who apparently had some expertise in the area of fibromyalgia, you know, having some knowledge about what is important and what diagnostic techniques or questions or areas that he might have specifically inquired about restless leg syndrome and her reaction to cold weather and those things? Well, those things are mentioned in his letter, and basically it's a conversation between him and his patient. All you have to point out is that he might have been more sensitive to those issues than the other doctor who was orthopedic. Certainly. Well, Dr. Jensen was a rheumatologist. Dr. Anderson is an orthopedist. Dr. Junk was an internal medicine doctor. But they're all, you know, in the field of medicine today. So, yes, someone who specializes in fibromyalgia every day, and that is possibly what he teaches at UW, would certainly be aware of those factors, but we have no reason to believe that the other doctors would not have been similarly acquainted, especially Dr. Jensen, the other rheumatologist. Do you have anything else you wanted me to talk about in particular? No. Okay. Okay. Let me show you. Thank you.  Mr. Yonashirobata. As a general rule, we don't like to rely on requiring the government to follow its own hallux, which sort of makes sense since it's their own rules and they're supposed to follow them. But actually, the precedent in this circuit is pretty much that if it's just hallux in a vacuum, maybe it's not enforceable. But if it's hallux that's sort of codifying other rules that are enforceable, it is enforceable. And the hallux that applies to the issue of citing articles that weren't in the record requires an ALJ to submit copies of the cited studies to Ms. Wentworth's attorney, and it also says he has to make it part of the record. He didn't follow hallux. He didn't follow, well, the law on that. I would want to now address whether or not this case should be remanded for pay or not. In my opinion, although this was a Step 4 decision, the opinion of Dr. Brown is so clear and the reasons for rejecting it are so improper, all of them illegitimate, that this Court should credit as true Dr. Brown's opinion. Crediting his opinion as true can only support a finding that Ms. Wentworth is not able to do even part-time sedentary work. She was over 50 years old throughout the time period. She should therefore be found to be disabled. She's now 56. She's waited long enough for justice in this case. Thank you. Thank you. All right. This case is submitted for decision.
judges: Reavley , Tashima, Paez